IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

VICTOR BUFFINGTON

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C13-0142

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     A.    Buffington's Education and Employment Background . . . . . . . . . . 4
     B.    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . . . 4
         1.    Buffington's Testimony . . . . . . . . . . . . . . . . . . . . . . . . 4
         2.    Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . . 5
     C.    Buffington's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . . 12
     B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . . 14
         1.    Severe Impairments . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         2.    Dr. Drwal's Opinions . . . . . . . . . . . . . . . . . . . . . . . . . 18
         3.    Dr. Oleskowicz's Opinions and the Department of Veterans
              Affairs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
         4.    Credibility Determination . . . . . . . . . . . . . . . . . . . . . . 23
     C.    Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VI.    ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Victor Buffington on December 20, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Buffington asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Buffington requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'"

---

[1] On January 8, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

*Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v.*

*Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Buffington's Education and Employment Background

Buffington was born in 1966. He is a high school graduate. He served in the military from 1985 to 1998. Following his military service, Buffington earned a master's degree in information technology. In the past, Buffington worked in information technology and information security jobs at several companies.

### B. Administrative Hearing Testimony

#### 1. Buffington's Testimony

At the administrative hearing, the ALJ inquired what Buffington believed was his primary obstacle to working a full-time job. Buffington replied that his biggest obstacle is interpersonal relationships. Buffington explained that he internalizes work friction, making it difficult for him to get along with co-workers, and communicate effectively with them. He also stated that his problems with suicidal ideation make full-time work difficult. Specifically, Buffington stated that his frequent suicidal ideation would cause him to miss work and not be reliable to an employer. Buffington also discussed difficulties with PTSD and depression. Buffington explained that his PTSD is attributed to military experiences he had while serving in Bosnia. He also stated that he was also sexually assaulted on two separate occasions while in the military. According to Buffington, his PTSD causes

problems in the working environment when there is a breakdown in trust with a co-worker, because he does not know how to respond to such situations.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Marian Jacobs with a hypothetical for an individual who is:

> limited to [per]forming light duty . . . and . . . the worker can have only occasional and brief and superficial contact with the public and co-workers.

(Administrative Record at 63-64.) The vocational expert testified that under such limitations, Buffington could not perform his past relevant work. The vocational expert testified, however, that Buffington could perform the following jobs: (1) alarm monitor (500 positions in Iowa and 64,000 positions in the nation), (2) data examination clerk (5,400 positions in Iowa and 506,000 positions in the nation), (3) laundry folder (450 positions in Iowa and 39,000 positions in the nation), (4) delivery router (1,400 positions in Iowa and 142,000 positions in the nation), (5) document preparer of microfilming materials (1,000 positions in Iowa and 95,000 positions in the nation), and (6) final assembler of optical frames (500 positions in Iowa and 27,000 positions in the nation). The ALJ further inquired of the vocational expert:

> Q:  I want to ask you now about limitations on interaction with supervisors on the job. So, if I were to ask you to assume that, I'm just going to ask you to assume that one, for one out of every 10 official interactions with a supervisor, there's an interaction that deals with job issues only. One out of every 10 of those, the individual would behave in an inappropriate manner, and would disrupt the workplace, and not be productive at all for, let's just say, 15 minutes at a time while the worker is in conflict with a supervisor. . . . [I]n other words, every one out of every 10 occasions where he's discussing job tasks with a supervisor, he would disrupt the workplace and be non-productive for 15 minutes.

> Would the person with those limits be competitively employable in your view?

A: I assume this would be ongoing.

Q: Yes.

A: Then I think it would take him out of competitive employment. He might last for a while, but eventually, he would be terminated, and probably have a hard time finding another job if everything in his past work history were considered.

(Administrative Record at 67-68.)

Buffington's attorney also questioned the vocational expert. Buffington's attorney inquired:

Q: [I]f the person needs to leave the workplace four times a week to go to counseling and therapy appointments in groups, would that person be able to maintain regular employment?

A: No.

Q: If the person misses work more than two times a week due to their symptoms related to PTSD and depression, would that eliminate competitive employment?

A: Yes. . . .

Q: And if a person works at a slow pace or is not able to regularly complete the tasks in a timely manner due to problems with concentration, panic attacks, . . . [and] other kinds of distractions during the day, would that eliminate competitive employment?

A: Yes.

(Administrative Record at 68-70.)

## C. Buffington's Medical History

On April 9, 2010, Buffington met with Dr. Benjamin I. Shepherd, M.D., at the Veteran Affairs Medical Center ("VAMC") in Iowa City, Iowa, for a PTSD evaluation. In reviewing Buffington's medical history, Dr. Shepherd noted that:

> [Buffington] notes [] longstanding issues with being unable to trust people, significant anxiety, and always being on edge. He notes that these issues have caused significant problems in

his life -- specifically, he has lost jobs in the past, and actually just today he broke up with his girlfriend of over a year. . . .

Sleep is quite poor -- he has a very difficult time getting to sleep, often tossing and turning until 3 in the morning. Nightmares occur as well, 3-4 times per week -- not necessarily related to military experience. . . . He was not involved in combat per se, but was a translator in Germany, involved in [working with victims] of war criminals. His daughter was sexually molested[.] . . . He was also sexually assaulted in 1994 by a warrant officer while serving [in] Germany. All three of these events have led to what he feels like are major issues -- nightmares, hypervigilance, re-experiencing the events, avoidance behaviors, and low mood. . . .

[He a]dmits to hopelessness, periodic passive suicidality usually in the context of being alone. Denies intent to act on these ideations, and reports he wouldn't act because of his children.

(Administrative Record at 341.) Upon examination, Dr. Shepherd diagnosed Buffington with chronic PTSD and major depressive disorder. Dr. Shepherd recommended medication and counseling as treatment.

On July 19, 2010, Buffington met with Dr. Jeanette H. Oleskowicz, M.D., for a consultative examination in connection with his application for Veterans disability benefits. Dr. Oleskowicz noted the following symptoms for Buffington: daily depressed mood, daily irritability, constantly on edge, daily anxiety, weekly panic attacks, difficulty sleeping, anger issues, argumentativeness, concentration problems, decreased attention span, and weekly suicidal feelings. Upon examination, Dr. Oleskowicz diagnosed Buffington with chronic PTSD, major depressive disorder, and alcohol abuse. Dr. Oleskowicz opined that:

[Buffington] has moderate to severe PTSD symptoms concurrent with depressive symptoms that include depressed mood, poor concentration, [poor] attention, anxiety, panic

> attacks, feelings of hopelessness and suicidality. His
> relationship with his girlfriend is dissolving and he is
> unemployed, unable to build trusting relationships. He has
> impairment socially and is withdrawn with only 1 friend and
> no one to confide in.

(Administrative Record at 406.) Dr. Oleskowicz further noted that objective PTSD, depression, and anxiety testing showed "significant" PTSD, "severe" depression, and "severe" anxiety. More specifically, Dr. Oleskowicz concluded that Buffington suffered from significant PTSD due to two sexual assaults while in the military, discovering that his daughter was molested while he was overseas, and witnessing casualties to Bosnians while serving in the military.

On October 5, 2010, the Department of Veterans Affairs ("DVA") determined that Buffington was entitled to "service connected compensation" due to PTSD with major depressive disorder and alcohol abuse. Buffington's PTSD, depression, and alcohol abuse was rated at 100 percent disabling, effective October 14, 2009, the date he filed his claim for service-connected compensation. According to the DVA, "[a]n evaluation of 100 percent is assigned whenever there is evidence of total occupational and social impairment[.]"[2] Lastly, the DVA noted that Buffington would be re-evaluated in the future because it was possible that his PTSD and depression might improve with treatment.

On October 28, 2010, Dr. Sandra Davis, Ph.D., reviewed Buffington's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Buffington. On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Buffington with major depressive disorder, anxiety with recurrent and intrusive recollections of traumatic experience, which are a source of marked distress, and alcohol abuse. Dr. Davis determined that Buffington had the following limitations: mild

---

[2] Administrative Record at 419.

restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis determined that Buffington was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. Dr. Davis concluded that:

> [Buffington] has some moderate problems with attention and concentration which will likely impact complex and detailed task completion. He will have interpersonal problems with authority at times, and has lack of trust with peers. He will need preparation for rapid or complex change. Attendance has been a problem in the past.
>
> The medical evidence is relatively consistent. There are no significant challenges to the credibility of [Buffington's] allegations.

(Administrative Record at 424.)

On December 15, 2010, at the request of DDS, Buffington met with Dr. Robin L. Epp, M.D., for a consultative examination. Buffington reported a history of gastrointestinal problems, including ulcers, hemorrhoids, polyps, and irritable bowel syndrome. He also reported arthritic pain in his right hand and low back. In reviewing Buffington's activities of daily living, Dr. Epp noted that:

> Mr. Buffington has problems with self-care and personal hygiene activities relating that he loses control of his urine and

> bowels relating that he soils himself about once a day or every
> other day. . . . He also [] has problems with thoughts and . . .
> is easily distracted. . . . Mr. Buffington has problems with
> physical activities such as sitting or standing for more than 30
> to 45 minutes which causes severe back pain. He also relates
> that when walking at times he will have bowel accidents.
> Mr. Buffington also relates problems with lifting and pushing
> and pulling items. He has problems with nonspecified hand
> activities such as gripping and grasping, lifting, carrying and
> pushing and pulling due to his back and thumb problems.

(Administrative Record at 442.) Upon examination, Dr. Epp opined that Buffington could:
(1) rarely lift, push, pull, or carry 20 pounds from floor to waist, (2) occasionally lift,
push, pull, or carry 20 pounds from waist to shoulder, and (3) rarely lift, push, pull, or
carry 20 pounds over the shoulder. Dr. Epp further opined that Buffington could
occasionally sit, stand, walk, stoop, bend, kneel, use his upper extremities, grip and grasp,
and use his lower extremities, but could only rarely crawl and climb. According to
Dr. Epp, Buffington's restriction in such areas was due to low back pain.

On December 27, 2011, Buffington met with Dr. Oleskowicz for re-evaluation of
his entitlement to continued Veterans disability benefits. Dr. Oleskowicz diagnosed
Buffington with chronic PTSD, major depressive disorder, and alcohol abuse in early full
remission. Dr. Oleskowicz rated Buffington's GAF score at 45. Dr. Oleskowicz opined
that Buffington has an "[o]ccupational and social impairment with deficiencies in most
areas, such as work, school, family relations, judgment, thinking and/or mood."[3]
Dr. Oleskowicz noted since his last evaluation, Buffington had dropped out of classes at
Kirkwood Community College due to difficulties with concentration. Dr. Oleskowicz also
found that Buffington had the following signs and symptoms: depressed mood, anxiety,
suspiciousness, panic attacks (more than one per week), chronic sleep impairment, mild
memory loss, impaired judgment, disturbance of motivation and mood, difficulty

---

[3] Administrative Record at 646.

establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, such as work settings, suicidal ideation, impaired impulse control, including unprovoked irritability, and neglect of personal appearance and hygiene. Dr. Oleskowicz concluded that:

> [Buffington] has significant PTSD symptoms along with depression -- he experiences mood lability, reduced concentration, poor motivation, sleeping disturbances, intermittent suicidal [ideation] with plan but no intent. He is currently newly sober from alcohol . . . he also is attending group therapy for substance abstinence/PTSD on a regular basis. Additionally, he has indicated intermittent compliance with psychiatric medications. Regarding permanent and total disability -- [Buffington] will have PTSD for a long time. However, he is now newly and fully sober . . . he has also never been through a residential PTSD . . . program and so it is possible his symptoms will improve with the above steps. It is my medical opinion that [Buffington's] contention is not at this point in time total and permanent as he might improve over time with dedicated sobriety; intense treatment and with more regular compliance of psych meds.

(Administrative Record at 653-654.)

On January 11, 2012, the DVA determined that Buffington's "[e]valuation of posttraumatic stress disorder with major depressive disorder and alcohol abuse, which is currently 100 percent disabling, is continued."[4] The DVA concluded that since there was a possibility of improvement, "the assigned evaluation is not considered permanent and is subject to a future review examination."[5]

On April 30, 2012, at the request of Buffington's attorney, Dr. Jason Drwal, Ph.D., Buffington's treating psychologist, filled out a medical source statement with regard to Buffington. Basing his opinion on diagnostic interviews, 11 months of psychotherapy

---

[4] Administrative Record at 658.

[5] *Id.* at 660.

sessions, and review of Buffington's medical records, Dr. Drwal determined that Buffington is markedly limited in his ability to: interact appropriately with the public, respond appropriately to work pressures in a usual work setting, and be punctual and maintain regular attendance at work. Dr. Drwal opined that:

> Mr. Buffington's ability to interact [with] the public shows marked impairment. However, in a work setting, in which he is expected to be on-site [and] couldn't fully control his schedule, he would struggle even more. I base this on my diagnostic evaluation [and] from assessment conducted during psychotherapy.

(Administrative Record at 944.) Dr. Drwal also noted that Buffington "has a history of alcohol dependence, which is in early full remission. His symptoms are still present [and] I have rated him as if he is no longer using alcohol. If he were to use my ratings would be more severe."[6]

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Buffington is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

---

[6] Administrative Record at 944.

12

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id*. The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Buffington had not engaged in substantial gainful activity since January 9, 2009. At the second step, the ALJ concluded from the medical evidence that Buffington had the following severe impairments: anxiety disorder, mood disorder, and intermittent alcohol abuse. At the third step, the ALJ found that Buffington did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Buffington's RFC as follows:

> [Buffington] has the residual functional capacity to perform light work . . . except he can have only occasional, brief, and

13

superficial contact with the public and co-workers. He is
limited to performing simple and repetitive work.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Buffington could not perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Buffington could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Buffington was not disabled.

## B. Objections Raised By Claimant

Buffington argues that the ALJ erred in five respects. First, Buffington argues that the ALJ erred by not finding his PTSD and certain physical impairments to be severe impairments at step two of the five-step sequential evaluation. Second, Buffington argues that the ALJ failed to properly evaluate the opinions of Dr. Drwal, his treating psychologist. Third, Buffington argues that the ALJ failed to properly evaluate the opinions of Dr. Oleskowicz, a two-time consultative examining doctor. Fourth, Buffington argues that the ALJ improperly rejected the finding of 100% disability by the Department of Veterans Affairs. Lastly, Buffington argues that the ALJ failed to properly evaluate his subjective allegations of disability.

### 1. Severe Impairments

Buffington argues that "the ALJ failed to find that [his] post-traumatic stress disorder (PTSD) was a severe impairment. He offered no explanation in his step two analysis for this failure."[7] Buffington further points out that there is a plethora of evidence supporting his diagnosis of PTSD. For example in 2009, following examination, Mark W. Bingham, a physician assistant, determined that Buffington met the criteria for referral to psychiatry for treatment of PTSD.[8] In March 2010, upon testing by a staff psychologist

---

[7] Buffington's Brief (docket number 10) at 8.

[8] See Administrative Record at 355-356.

at the VAMC, Dr. Heather M. Cochran, Ph.D., determined that Buffington had "clinically significant PTSD symptoms."[9] In April 2010, VAMC psychiatrists, Drs. Benjamin Shepherd and Catherine Woodman, confirmed Buffington's diagnosis of PTSD.[10] Most significantly, in October 2010, and then again in January 2012, affirming the October 2010 determination, the DVA determined that Buffington was 100% disabled due to PTSD (60%) and major depressive disorder (40%).[11] The DVA's disability determination was based in large part on the findings of PTSD by Dr. Oleskowicz, an examining doctor.[12] Buffington concludes that the ALJ "ignored the consistent opinions of all the medical practitioners in the record who diagnosed [him] with severe PTSD, and the objective measures that showed severe PTSD symptoms throughout much of the period in question, an omission that amounts to reversible error."[13]

Buffington also argues that the ALJ improperly applied the psychiatric review technique in evaluating the severity of his mental impairments. Specifically, Buffington argues that the ALJ failed to explain his reasons for finding that he had moderate difficulties in activities of daily living and social functioning, and mild difficulties in concentration, persistence, or pace. Buffington concludes that remand is appropriate

---

[9] Administrative Record at 350.

[10] *Id.* at 344-345.

[11] *Id.* at 412-420 (DVA's first determination); 656-660 (DVA's second determination).

[12] *Id.* at 397-407 (Dr. Oleskowicz's first examination); 643-654 (Dr. Oleskowicz's second evaluation).

[13] Buffington's Brief (docket number 10) at 11.

because "[t]he ALJ's finding that [he] is only mildly or moderately impaired in these areas is contrary to the medical evidence."[14]

Lastly, Buffington argues that the ALJ failed to adequately address the severity of his physical impairments. Specifically, Buffington takes exception to the ALJ's determination that his difficulties with GERD/irritable bowel syndrome, back pain, and use of his right hand were non-severe. Buffington concludes that "[t]hese physical limitations impose more than slight limitations on [his] ability to work at a full-time level. Indeed, the ALJ found that [he] was limited to light work, presumably by a physical impairment. If his physical impairments were indeed severe enough to limit him to light work, then they clearly were severe at step two of the sequential evaluation."[15]

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). In other words, if the impairment would only have a minimal effect on a claimant's ability to work, then it would not constitute a severe impairment. *Id.* (citation omitted). The Eighth Circuit Court of Appeals has stated "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that claimant failed to make this showing." *Id.* at 708 (citations omitted).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record

---

[14] Buffington's Brief (docket number 10) at 29.

[15] *Id.* at 31.

fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

The Court agrees with Buffington's arguments. The Court finds it nearly incomprehensible that the ALJ did not address Buffington's diagnosis of PTSD at step 2 of the 5-step sequential evaluation, let alone determine that his PTSD was a severe impairment. The record overwhelmingly supports a finding that Buffington's PTSD is a severe impairment. For example, multiple treating and examining doctors diagnosed Buffington with PTSD. Furthermore, objective testing consistently showed that Buffington suffered from PTSD. Moreover, and most significantly, the Department of Veterans Affairs determined in October 2010 that Buffington was 100% disabled due to PTSD, and affirmed that determination in January 2012, following re-examination of Buffington by Dr. Oleskowicz. Accordingly, the Court concludes that remand is necessary to allow the ALJ to both consider and address Buffington's PTSD impairment at step 2 of the 5-step evaluation. Similarly, the Court finds that given the record's vast amount of medical evidence regarding Buffington's difficulties with PTSD and depression, the ALJ's failure to explain his reasoning for his limitation findings after applying the psychiatric review technique requires remand. *See Cox*, 495 F.3d at 618 (an ALJ has a duty to fully and fairly develop the record).

Lastly, with regard to his physical impairments, the ALJ addressed Buffington's hand and back problems, but failed to mention, let alone address his difficulties with GERD and irritable bowel syndrome. Again, there is ample evidence in the record discussing these impairments. Because the Court is remanding this matter for further development and consideration of Buffington's mental impairments at step 2 of the 5-step evaluation, the Court finds that the ALJ should also reconsider Buffington's physical impairments at step 2, particularly his difficulties with GERD and irritable bowel syndrome.

## 2. Dr. Drwal's Opinions

Buffington argues that the ALJ failed to properly evaluate the opinions of his treating psychologist, Dr. Drwal. Buffington acknowledges that the ALJ gave Dr. Drwal's opinions "some weight," but asserts that the ALJ "failed to include Dr. Drwal's restrictions in the RFC."[16] Specifically, Buffington contends that:

> The ALJ offered no explanation for why he was not giving this opinion controlling weight as required in 20 C.F.R. § 404.1527. Despite Dr. Drwal's opinion that Mr. Buffington was "markedly" limited in his ability to interact with the general public, the ALJ found that Mr. Buffington could occasionally interact with the public. Furthermore, the ALJ offered no explanation for why he ignored Dr. Drawl's restrictions on Mr. Buffington's ability to respond appropriately to changes in a routine work setting and to maintain regular attendance.

Buffington's Brief (docket number 10) at 13. Buffington concludes that this matter should be remanded for further consideration of Dr. Drwal's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the

---

[16] Buffington's Brief (docket number 10) at 13.

doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ provided a summary of Dr. Drwal's opinions from his medical source statement.[17] The ALJ also weighed the opinions of Dr. Drwal as follows:

> The undersigned has given some weight to Dr. Drwal's opinions. Notably, Dr. Drwal concluded [Buffington] had no limitations in understanding or carrying out most simple to detailed tasks. The undersigned has given consideration to the social limitations proposed by Dr. Drwal but the record more fully supports the residual functional capacity detailed above.

(Administrative Record at 21.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. Specifically, the ALJ offers no reason or explanation for why the record does not support Dr. Drwal's opinions as they relate to Buffington's social functioning. Indeed, Dr. Drwal opined that:

> Mr. Buffington's ability to interact [with] the public shows marked impairment. However, in a work setting, in which he is expected to be on-site [and] couldn't fully control his schedule, he would struggle even more. I base this on my diagnostic evaluation [and] from assessment conducted during psychotherapy.

(Administrative Record at 944.) In addition to not addressing Dr. Drwal's opinions on Buffington's social functioning, the ALJ points to no evidence in the record to support his assertion that such social functioining limitations should be discounted.

---

[17] Administrative Record at 21.

Therefore, having reviewed the entire record, the Court concludes that even though the ALJ gave Dr. Drwal's opinions "some" weight, he failed to give "good reasons" for discounting Dr. Drwal's opinions as they relate to Buffington's social limitations. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Drwal's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Drwal's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Drwal's opinions and support his reasons with evidence from the record.

### 3. Dr. Oleskowicz's Opinions and the Department of Veterans Affairs

Buffington argues that the ALJ failed to adequately address the opinions of Dr. Oleskowicz, an examining source, who provided a detailed disability evaluation for Buffington in connection with his application for Veterans disability benefits. Buffington further argues that the ALJ improperly rejected the finding of 100% disability by the Department of Veterans Affairs. Buffington concludes that this matter should be remanded for further consideration of Dr. Oleskowicz's opinions and the findings of the DVA.

In his decision, the ALJ reviewed Dr. Oleskowicz's findings and noted that even though the DVA determined Buffington was 100% disabled based on Dr. Oleskowicz's findings, Dr. Oleskowicz believed it was possible that Buffington's condition might improve in the future.[18] In weighing the Dr. Oleskowicz's opinions and the findings of the DVA, the ALJ determined:

> The undersigned has given limited weight to Dr. Oleskowicz
> and little weight to the determination of the Department of
> Veterans Affairs. Dr. Oleskowicz did provide a description of
> [Buffington's] functional limitations, and thus her opinions are

---

[18] *See* Administrative Record at 20-21.

of slightly more probative value. A decision by any other
nongovernmental agency or other governmental agency about
disability or blindness is based on that agency's rules and is
not binding on the Social Security Administration.

(Administrative Record at 21.)

In *Morrison v. Apfel*, 146 F.3d 625 (8th Cir. 1998), the Eighth Circuit Court of
Appeals specifically addressed the type of consideration ALJ's should give opinions from
the Department of Veterans Affairs, and VA doctors and medical sources, such as
Dr. Oleskowicz. The Eighth Circuit stated:

It is true that "the ALJ does not have to discuss every piece of
evidence presented. . . ." *Miller v. Shalala*, 8 F.3d 611, 613
(8th Cir. 1993). It is also true that a disability determination
by the VA is not binding on an ALJ considering a Social
Security applicant's claim for disability benefits. *See Jenkins
v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996). We think,
however, that the VA finding was important enough to deserve
explicit attention. We agree with other courts that findings of
disability by other federal agencies, even though they are not
binding on an ALJ, are entitled to some weight and must be
considered in the ALJ's decision. *See Wilkins v. Callahan*,
127 F.3d 1260, 1262 (10th Cir. 1997); *Baca v. Department of
Health and Human Services*, 5 F.3d 476, 480 (10th Cir.
1993); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979).

It may be, as the Commissioner suggests, that the ALJ's
failure to address the VA findings constituted an "implicit
rejection" of the finding of disability by the VA. . . .
Nonetheless, an extensive physical examination documenting
Morrison's medical problems, followed by a finding of a
permanent and total disability by another government agency,
all of which occupies some thirty pages in the record, merits
more than simply an implicit rejection. If the ALJ was going
to reject the VA's finding, reasons should have been given, to
enable a reasoned review by the courts. We are fortified in
this conclusion by the fact that the Social Security
Administration has given this very instruction to its
adjudicators. A 1992 memorandum from the Social Security

> Administration's Chief Administrative Law Judge to the Office
> of Hearings and Appeals field personnel reminded "all ALJs
> and decision writers that even though another agency's
> determination that a claimant is disabled is not binding on SSA
> . . ., the ALJ must evaluate it as any other piece of evidence,
> and address it in the decision." Memorandum, Social Security
> Administration Office of Hearings and Appeals (Oct. 2, 1992),
> at 3 (emphasis added).

*Morrison*, 146 F.3d at 628.

Here, Dr. Oleskowicz's diagnoses, and the finding of disability due to PTSD and depression by the DVA is supported by the medical evidence in the record. Additionally, Dr. Oleskowicz provided two thorough examinations in October 2010 and December 2011, including detailed notes concerning Buffington's impairments and limitations totaling 19 pages in the record.[19] Therefore, having thoroughly reviewed the entire record, the Court finds that the ALJ's implicit rejection of Dr. Oleskowicz's opinions, and disregard for the findings of the DVA was insufficient. "If the ALJ was going to reject the VA's finding, reasons should have been given, to enable a reasoned review by the courts." *Morrison*, 146 F.3d at 628. Accordingly, on remand the ALJ must thoroughly address the opinions of Dr. Oleskowicz, and provide reasons for accepting or rejecting her opinions, consistent with *Morrison*. Similarly, the ALJ must also thoroughly address the findings of the Department of Veterans Affairs, and provide reasons for accepting or rejecting its findings, also consistent with *Morrison*.

### 4. *Credibility Determination*

Buffington argues that the ALJ failed to properly evaluate his subjective allegations of disability. Buffington maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly

---

[19] *See* Administrative Record at 397-407 (Dr. Oleskowicz's first examination); 643-654 (Dr. Oleskowicz's second evaluation).

considered Buffington's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good

24

reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[20] The ALJ also addressed some of the *Polaski* factors and offered some reasoning for finding Buffington's subjective allegations of disability less than credible.[21] Under such circumstances, the Court would normally affirm the ALJ's credibility determination. The Court is reluctant to affirm the ALJ's credibility determination in this instance, however, because the ALJ's decision relies heavily on the ALJ's perceived lack of limitations from psychological impairments for Buffington. As discussed in section *IV.B.1* of this decision, the ALJ failed to fully and fairly develop the record and properly consider Buffington's diagnosis and treatment for PTSD. In section *IV.B.2* of this decision, the Court determined that the ALJ failed to fully and fairly develop the record and properly consider the opinions of Buffington's treating psychologist, Dr. Drwal. Dr. Drwal opined that Buffington had significant

---

[20] *See* Administrative Record at 21-22.

[21] *Id*. at 22.

limitations in social functioning that were not addressed by the ALJ.[22]   Additionally, as discussed in section *IV.B.3* of this decision, the ALJ failed to fully and fairly develop the record and properly address the opinions of Dr. Oleskowicz, or address the DVA's finding of 100% disability for Buffington.   Accordingly, the Court believes that in remanding this matter for further consideration of Buffington's impairments, particularly PTSD, the opinions of Dr. Drwal and Dr. Oleskowicz, and the disability finding of the DVA, the ALJ should also further consider Buffington's allegations of disability in light of his reconsideration of the pertinent medical source opinions and records.   *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, the Court remands this matter for further development of Buffington's credibility determination.

### C.  Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

---

[22] Dr. Drwal opined that:

> Mr. Buffington's ability to interact [with] the public shows marked impairment.  However, in a work setting, in which he is expected to be on-site [and] couldn't fully control his schedule, he would struggle even more.  I base this on my diagnostic evaluation [and] from assessment conducted during psychotherapy.

Administrative Record at 944.

> The court shall have the power to enter, upon the pleadings
> and transcript of the record, a judgment affirming, modifying,
> or reversing the decision of the Secretary, with our without
> remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a
> finding of disability and the claimant has demonstrated his [or
> her] disability by medical evidence on the record as a whole,
> we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, while the Court believes that it is a very close issue due to the ALJ's almost complete lack of considering or addressing Buffington's mental impairments, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ failed to: (1) fully and fairly develop the record with regard to Buffington's mental and physical impairments at step 2 of the 5-step sequential evaluation, (2) fully and fairly develop the record with regard to the opinions of Dr. Drwal and Dr. Oleskowicz, (3) fully and fairly develop the record with regard to the findings of the Department of Veterans Affairs, and (4) make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully consider and fairly develop the record with regard to Buffington's mental and physical impairments at step 2 of the 5-step evaluation. The ALJ must also fully and fairly develop the record with regard to the

27

opinions of Dr. Drwal and Dr. Oleskowicz. In considering these opinions, the ALJ shall provide clear reasons for accepting or rejecting the opinions of Dr. Drwal and Dr. Oleskowicz. Similarly, the ALJ must also fully and fairly develop the record with regard to the findings of 100% disability by the Department of Veterans Affairs. Lastly, the ALJ must consider all of the evidence relating to Buffington's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations, particularly in light of his consideration of the medical source evidence.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this __27th__ day of October, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA